UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>VICTOR SANCHEZ,<br><br>Defendant. | No.  1:15-cr-00169-DAD<br><br>ORDER DENYING DEFENDANT VICTOR SANCHEZ'S EMERGENCY MOTION TO REDUCE SENTENCE UNDER 18 U.S.C. § 3582(c)(1)<br><br>(Doc. No. 155) |

Pending before the court is a motion for a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) brought on behalf of defendant Victor Sanchez (Doc. No. 155.) That motion is based in part on the purported risks allegedly posed to defendant Sanchez by the ongoing coronavirus ("COVID-19") pandemic. For the reasons explained below, defendant's motion will be denied.

**BACKGROUND**

On June 12, 2017, following his plea of guilty to one count of conspiracy to distribute and possess with intent to distribute 50 grams and more of actual methamphetamine and/or 500 grams and more of a mixture containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), the court sentenced defendant Sanchez to a term of 144 months in the custody of the U.S. Bureau of Prisons ("BOP"), followed by a term of 60 months of

supervised release.  (Doc. Nos. 110, 115.)  The court also imposed the mandatory $100 special assessment.  (Doc. Nos. 110; 115 at 6.)

Defendant is now serving his sentence at the Federal Correctional Institution, Big Spring ("FCI Big Spring") in Texas.  (Doc. No. 155 at 1.)  As of the date of this order, defendant Sanchez has served only approximately 68 months of his 144-month custodial sentence and has an estimated release date of April 18, 2025.  (*Id*. at 23; Doc. No. 160 at 3.)

On December 15, 2020, defendant filed the pending motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).  (Doc. No. 155.)  On January 15, 2021, the government filed its opposition to the motion.  (Doc. No. 160.)  To date, defendant has not filed a reply and the time to do so has now passed.

## LEGAL STANDARD

A court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances.").  Those limited circumstances include compassionate release in extraordinary cases.  *See United States v. Holden*, 452 F. Supp. 3d 964, 968 (D. Or. 2020).  Prior to the enactment of the First Step Act of 2018 ("the FSA"), motions for compassionate release could only be filed by the BOP.  18 U.S.C. § 3582(c)(1)(A) (2002).  Under the FSA, however, imprisoned defendants may now bring their own motions for compassionate release in the district court.  18 U.S.C. § 3582(c)(1)(A) (2018). In this regard, the FSA specifically provides that a court may

/////
/////
/////
/////
/////
/////
/////

2

> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf[1] or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that –
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i) and (ii).[2]

---

[1] If the BOP denies a defendant's request within 30 days of receipt of such a request, the defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a). If the regional director denies a defendant's administrative appeal, the defendant must appeal again to the BOP's "General Counsel within 30 calendar days of the date the Regional Director signed." *Id.* "Appeal to the General Counsel is the final administrative appeal." *Id.* When the final administrative appeal is resolved, a defendant has "fully exhausted all administrative rights." *See* 18 U.S.C. § 3582(c)(1)(A).

[2] Under 18 U.S.C. § 3624(c)(2), the BOP may release an incarcerated defendant to home confinement "for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." The Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act"), Pub. L. 116-136, expands the BOP's authority to release incarcerated defendants without judicial intervention. The CARES Act allows the BOP to "lengthen the maximum amount of time" for which a prisoner may be placed in home confinement under § 3624(c)(2) "as the Director determines appropriate," assuming "the Attorney General finds that emergency conditions will materially affect the functioning" of the BOP. CARES Act, Pub. L. 116-136, Div. B, Title II, § 12003(b)(2) (2020). However, the BOP's authority in this regard is limited to "the covered emergency period." *Id.* The BOP's authority expires "30 days after the date on which the national emergency declaration terminates." *Id.* § 12003(a)(2). After the CARES Act was enacted, the Attorney General issued a memo instructing the BOP to "immediately review all inmates who have COVID-19 risk factors" beginning with those who are housed at facilities where "COVID-19 is materially affecting operations." Office of Att'y Gen., *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020). The BOP has

The applicable policy statement with respect to compassionate release in the U.S. Sentencing Guidelines sets out criteria and circumstances describing "extraordinary and compelling reasons." U.S. Sent'g Guidelines Manual ("U.S.S.G.") § 1B1.13[3] (U.S. Sent'g Comm'n 2018); *see also United States v. Gonzalez*, 451 F. Supp. 3d 1194, 1197 (E.D. Wash. 2020) (noting that courts "universally" rely on U.S.S.G. § 1B1.13 to define "extraordinary and compelling reasons," even though that policy statement was issued before Congress passed the FSA and authorized defendants to file compassionate release motions). However, a large and growing number of district courts across the country have concluded that because the Sentencing Commission has not amended the Guidelines since the enactment of the FSA, courts are not limited by the pre-FSA categories described in U.S.S.G. § 1B1.13 in assessing whether extraordinary and compelling circumstances are presented justifying a reduction of sentence under 18 U.S.C. § 3582(c). *See, e.g.*, *United States v. Parker*, 461 F. Supp. 3d 966, 979 (C.D. Cal. 2020) (collecting cases); *United States v. Rodriguez*, 424 F. Supp. 3d 674, 681 (N.D. Cal. 2019).

In the past, when moving for relief under 18 U.S.C. § 3582(c), it was recognized that the defendant bore the initial burden of demonstrating that a sentence reduction was warranted. *See United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998). Although the Ninth Circuit has not specifically addressed the question of which party bears the burden in the context of a motion for compassionate release brought pursuant to § 3582(c) as amended by the FSA, district courts that have done so agree that the burden remains with the defendant. *See, e.g.*, *United*

---

acted on the Attorney General's guidance, including one case in which a sentenced prisoner was released to home confinement after serving less than half his sentence from a facility that reported no positive COVID-19 cases at the time of his release. *See* Hannah Albarazi, *Paul Manafort Seeks Prison Release Over COVID-19 Fears*, Law360 (Apr. 14, 2020), https://www.law360.com/articles/1263706/paul-manafort-seeks-prison-release-over-covid-19-fears (noting that the prisoner's counsel had argued that the CARES Act "broadens the authority" of the BOP to release prisoners to home confinement); Khorri Atkinson, *Paul Manafort Released From Prison Amid COVID-19 Fears*, Law360 (May 13, 2020), https://www.law360.com/articles/1273090/paul-manafort-released-from-prison-amid-covid-19-fears.

[3] The Sentencing Guidelines also require that to be granted a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).

*States v. Greenhut*, No. 2:18-cr-00048-CAS, 2020 WL 509385, *1 (C.D. Cal. Jan. 31, 2020); *United States v. Van Sickle*, No. 18-cr-0250-JLR, 2020 WL 2219496, *3 (W.D. Wash. May 7, 2020).

## ANALYSIS

As district courts have summarized, in analyzing whether a defendant is entitled to compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), the court must determine whether a defendant has satisfied three requirements:

> First, as a threshold matter, the statute requires defendants to exhaust administrative remedies. 18 U.S.C. § 3582(c)(1)(A). Second, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction" and "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* Third, the district court must also consider "the factors set forth in Section 3553(a) to the extent that they are applicable." *Id*.

*Rodriguez*, 424 F. Supp. 3d at 680; *see also United States v. Ramirez-Suarez*, No. 16-cr-00124-LHK-4, 2020 WL 3869181, at *2 (N.D. Cal. July 9, 2020); *Parker*, 461 F. Supp. 3d at 970; *United States v. Trent*, No. 16-cr-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9, 2020) (noting that as to the third factor, under 18 U.S.C. § 3582(c)(1)(A) release must be "consistent with" the sentencing factors set forth in § 3553(a)).

**A.      Administrative Exhaustion**

As an initial matter, the court finds that defendant Sanchez failed to exhaust his administrative remedies with the BOP before bringing his motion for compassionate release in this court. According to the government, defendant has not submitted a request for compassionate release to the warden. (Doc. No. 160 at 7–10.) Defendant Sanchez appears to concede that no such administrative request was filed, and instead requests that the court waive the exhaustion requirement under the circumstances presented in his case. (Doc. No. 155 at 13–14) ("Mr. Sanchez was provided with documentation outlining the compassionate release process; however, it is unclear whether he petitioned the Warden at [FCI Big Spring].")

It therefore appears, at least based on the record currently before the court, that defendant did not attempt to submit a request for compassionate release to the BOP. Courts have deemed

such lapses as inexcusable failure to exhaust administrative remedies. *See, e.g.*, *United States v. Bowen*, No. 1:18-CR-15-DAD, 2020 WL 4612016, at *3 (E.D. Cal. Aug. 11, 2020) (defendant's failure to exhaust his administrative remedies with BOP barred his application for compassionate release); *United States v. Cruceru*, No. 2:15-cr-00235-TLN, 2020 WL 2468414, at *2 (E.D. Cal. May 13, 2020) (same); *United States v. Alaniz*, No. 1:15-CR-329-DAD, 2020 WL 1974150, at *1 (E.D. Cal. Apr. 24, 2020) (denying motion without prejudice to its renewal upon proper exhaustion of defendant's administrative remedies). Even assuming that the exhaustion requirement can be waived in circumstances where a prisoner is unable to exhaust his administrative remedies, defendant Sanchez has not demonstrated futility or irreparable harm that would justify any such waiver here.

Accordingly, the court finds that defendant Sanchez has failed to his exhaust administrative remedies as required by 18 U.S.C. § 3582(c)(1)(A), and the court is barred from considering of his motion for compassionate release.

**B.      Extraordinary and Compelling Reasons**

For the reasons explained below, even if the court were to reach the merits of defendant's motion, it would still deny his motion for compassionate release.

According to the Sentencing Commission's policy statement, "extraordinary and compelling reasons" warranting compassionate release may exist based on a defendant's medical conditions, age and other related factors, family circumstances, or "other reasons." U.S.S.G. § 1B1.13, cmt. n.1 (A)–(D). Even though the catch-all of "other reasons" was included in the policy statement at a time when only the BOP could bring a compassionate release motion, courts agreed that it may be relied upon by defendants bringing their own motions for reductions in their sentence under the FSA. *See, e.g.*, *United States v. Kesoyan*, No. 2:15-cr-00236-JAM, 2020 WL 2039028, at *3–4 (E.D. Cal. Apr. 28, 2020) (collecting cases).

The medical condition of a defendant may warrant the granting of compassionate release by the court where the defendant "is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)," though "[a] specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required." U.S.S.G. § 1B1.13, cmt.

6

n.1(A)(i). Non-exhaustive examples of terminal illnesses that may warrant a compassionate release "include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id*. In addition to terminal illnesses, a defendant's debilitating physical or mental condition may warrant compassionate release, including when:

> The defendant is
>
> (I) suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id*. at cmt. n.1(A)(ii). Where a defendant has moderate medical issues that otherwise might not be sufficient to warrant compassionate release under ordinary circumstances, many courts have concluded that the risks posed by COVID-19 may tip the scale in favor of release when the particular circumstances of a case are considered in their totality. *See, e.g.*, *Parker*, 461 F. Supp. 3d at 980 ("Since the onset of the COVID-19 pandemic, courts have determined that inmates suffering from conditions such as hypertension and diabetes are now at an even greater risk of deteriorating health, presenting 'extraordinary and compelling' circumstances that may justify compassionate release.") (collecting cases); *United States v. Rodriguez*, 451 F. Supp. 3d 392, 405 (E.D. Pa. 2020) ("Without the COVID-19 pandemic—an undeniably extraordinary event—Mr. Rodriguez's health problems, proximity to his release date, and rehabilitation would not present extraordinary and compelling reasons to reduce his sentence. But taken together, they warrant reducing his sentence.").

Compassionate release may also be warranted based on a defendant's age and other related factors. Thus, "extraordinary and compelling reasons" exist where a "defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of

/////

imprisonment, whichever is less." U.S.S.G. § 1B1.13, cmt. n.1(B).[4]

Defendant Sanchez argues that there are extraordinary and compelling reasons warranting reduction of his custodial sentence because he suffers from health conditions that, according to the Centers for Disease Control and Prevention ("CDC"), place him at a high risk of severe illness from COVID-19, and he is incarcerated at FCI Big Spring, where defendant reports, at the time his motion was filed, that at least 749 individuals have tested positive for COVID-19. (Doc. No. 155 at 1–2.) Specifically, defendant asserts that he suffers from obesity, heart disease, high cholesterol, and narrowing of his arteries, all of which he contends place him at an increased risk of suffering severe illness were he to contract COVID-19 based on CDC guidance identifying those medical conditions as risk factors. (*Id.* at 10–13.) Despite these assertions, the court notes that defendant has not presented any copies of his medical records to substantiate that he presently suffers from these conditions. (*See id.*)

Defendant Sanchez also asserts in a generalized fashion that in light of his medical conditions and his incarceration, he is unable to provide self-care during this pandemic due to the conditions, layout, and previous high rates of COVID-19 infections at FCI Big Spring. (*Id.* at 9, 13, 16.) Further, defendant emphasizes that COVID-19 has spread in numerous BOP facilities, including FCI Big Spring, where 749 positive cases and three deaths have occurred. (*Id.* at 9.)

In its opposition, the government argues that defendant has failed to carry his burden of establishing his eligibility for compassionate release because the mere existence of COVID-19 in society or in the correctional institution where he is imprisoned is not an extraordinary and compelling reason justifying the granting of the requested relief, and defendant's health conditions do not diminish his ability to self-care at FCI Big Spring. (Doc. No. 160 at 10–12.) The government avers that defendant claims to suffer from only one health condition that places him at high-risk for complications or severe illness were he to contract COVID-19 and that is his obesity. (*Id.* at 11–12; Doc. No. 164.) While the government does not dispute that certain health

---

[4] This provision, however, does not apply here. As noted above, defendant Sanchez has now served only approximately 68 months of his 144-month custodial sentence. Moreover, defendant is only 44 years old (Doc. No. 155 at 1), and thus his age and age-related factors do not play a role in consideration of his pending motion.

8

1    conditions, such as obesity, may technically qualify under the CDC guidelines, the defendant's
2    recent medical records indicate that the BOP is monitoring and treating him as needed, and thus
3    defendant Sanchez "has not established that he is entitled to the rare and extraordinary relief" of
4    compassionate release. (*Id.* at 12.)

5    It is undisputed that according to the CDC, "[a]dults of any age" who have certain medical
6    conditions, including obesity with a BMI of 30 or higher and heart disease are "at increased risk
7    of severe illness from the virus that causes COVID-19." *See People with Certain Medical*
8    *Conditions*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-
9    ncov/need-extra-precautions/people-with-medical-conditions.html (last updated December 23,
10   2020). Here, however, the defendant has not provided any medical records to establish that he
11   presently suffers from the various debilitating diseases he claims to suffer from, instead merely
12   providing citations to the presentence report prepared in his case. (*See, e.g.*, Doc. No. 155 at 10)
13   ("Further, Mr. Sanchez appeared to be obese based on his height and weight figures. (PSR p.3).")
14   (citing Doc. No. 99 at 3) (citation omitted).

15   Moreover, defendant Sanchez has not shown, or even argued, that FCI Big Spring is
16   presently unable to monitor and adequately treat his medical conditions. *See United States v.*
17   *Ayon-Nunez*, No. 1:16-cr-00130-DAD, 2020 WL 704785, at *3 (E.D. Cal. Feb. 12, 2020)
18   ("Chronic conditions that can be managed in prison are not a sufficient basis for compassionate
19   release.") (internal quotation marks and citation omitted). Defendant's medical records reflect
20   that he has received regular medical treatment and attention from FCI Big Spring clinical
21   physicians for his medical conditions. (*See* Doc. No. 164—sealed.) In fact, the medical records
22   filed by the government in support of their opposition to the pending motion suggest that FCI Big
23   Spring is providing defendant Sanchez adequate medical care because he is being prescribed and
24   provided the medications necessary to care for his health conditions. (*Id*.)

25   Finally, defendant Sanchez has not persuasively argued or presented any evidence
26   establishing that the conditions he is currently facing at FCI Big Spring, render him unable to
27   adequately provide for his self-care. The court notes that as of February 12, 2021, FCI Big
28   Spring reports only six inmates and eleven staff members with active positive tests for COVID-

9

19.[5]  *See* Federal Bureau of Prisons, COVID-19 Coronavirus, https://www.bop.gov/coronavirus/ (last viewed Feb. 12, 2021).  It appears that despite the prior outbreaks of COVID-19 at that prison, FCI Big Spring has adequately managed the pandemic and that conditions in that regard have significantly improved at that institution.  Based on the evidence currently before this court, there is no basis upon which to find that the medical staff at FCI Big Spring is unable to monitor and care for defendant Sanchez.

Accordingly, the court concludes that defendant Sanchez has not met his burden of demonstrating extraordinary and compelling reasons for compassionate release under § 3582(c)(1)(A).  Therefore, his motion for compassionate release will be denied at this time.

**C.     Consistency With the § 3553(a) Factors**

Finally, even if defendant Sanchez had properly exhausted his administrative remedies and his pending motion had been supported by a showing of extraordinary and compelling reasons supporting his compassionate release, the undersigned is not persuaded that the requested reduction in his sentence would be consistent with consideration of the sentencing factors set forth at 18 U.S.C. § 3553(a).[6]  *See Parker*, 461 F. Supp. 3d at 979.

As noted above, defendant Sanchez is currently serving a 144-month sentence of imprisonment for conspiracy to distribute and possess with intent to distribute 50 grams and more

---

[5]  The undersigned does not necessarily accept these reported numbers at face value given the manner in which the CDC guidelines apparently allow for individuals to be counted as recovered from the virus without confirming test results.  However, there is also no evidence before the court contradicting those reported numbers.

[6]  Title 18 U.S.C. § 3553(a) provides that, in determining the sentence to be imposed, the court shall consider:  the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, protect the public from further crimes of the defendant and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences available; the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; any pertinent policy statement issued by the Sentencing Commission; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense.

of actual methamphetamine and/or 500 grams and more of a mixture containing a detectable amount of methamphetamine. (Doc. Nos. 110; 115 at 6.) The presentence report in defendant's case outlined that he was involved in a conspiracy where he provided a coconspirator with one pound of methamphetamine and was discovered with 267.4 grams of methamphetamine (actual). (Doc. No. 99 at 8.) A search of his residence revealed another 1,303 grams of "ice," 91.4 grams of heroin, 23.8 grams of cocaine, 4 pounds of methamphetamine in solution, 15.6 grams of methamphetamine, and 1.7 grams of MDMA. (*Id*.) With his acceptance of responsibility, the U.S. Probation Office determined that defendant's total offense level was 33 and that his criminal history category was III, resulting in an advisory sentencing guideline range calling for a term of imprisonment of between 168 and 210 months. (*Id*. at 4.) The probation officer recommended a low-end of the guideline range sentence of 168 months in BOP custody. (*Id*.) After considering all of the applicable § 3553(a) factors and the circumstances of this case, the undersigned varied downward from the advisory guideline range and sentenced defendant to a 144-month term of imprisonment as permitted under 18 U.S.C. § 3553(f).[7] (Doc. No. 115 at 2.)

In his pending motion, defendant contends that he does not pose a safety risk if released because while in custody, he "experienced no substantial behavioral issues" and he acquired good time credits. (Doc. No. 155 at 15.) Defendant Sanchez contends he scored low in Male Pattern Risk Scoring, was not convicted of a violent crime, and addressed his addiction issues while participating in BOP's Residential Drug Abuse Program. (*Id*.) Defendant requests that he be released to live with his fiancée and their child. (*Id*. at 7.)

The government counters that a reduction of defendant's sentence would not be consistent with consideration of the § 3553(a) sentencing factors. (Doc. No. 160 at 12–14.) The government asserts that defendant continues to pose a danger to the community because of the seriousness of his offense and because defendant's disciplinary history in the BOP undermines his claim of rehabilitation. (*Id.* at 13.) The government reports defendant received disciplinary sanctions after fighting with another inmate on May 13, 2018 and that this weighs against the

---

[7] The court notes that the charge to which defendant entered his plea of guilty carried with it a mandatory minimum term of imprisonment of ten years. (Doc. Nos. 95 at 6; 105 at 20.)

granting of compassionate release and the reduction of defendant's sentence to one of time-served. (*Id.*)

"'The length of the sentence remaining is an additional factor to consider in any compassionate release analysis,' with a longer remaining sentence weighing against granting any such motion." *United States v. Shayota*, No. 1:15-cr-00264-LHK-1, 2020 WL 2733993, at *6 (N.D. Cal. May 26, 2020) (quoting *United States v. Connell*, No. 18-cr-00281-RS-1, 2020 WL 2315858, at *6 (N.D. Cal. May 8, 2020)); *see also United States v. Lonich*, No. 1:14-cr-00139-SI-1, 2020 WL 2614874, at *3 (N.D. Cal. May 21, 2020) (denying motions for compassionate release, noting, "the Court finds it significant that defendants have served far less than half of their sentences"). Here, as of the date of this order, defendant Sanchez has served only about 68 months of his 144-month sentence, or approximately 47.2 percent. (Doc. Nos. 110; 115 at 6.) In the court's view, a reduction of defendant's 144-month sentence effectively to one of approximately 68 months would not adequately reflect the seriousness of his offense of conviction, promote respect for the law, provide just punishment, or afford adequate deterrence to criminal conduct. *See United States v. Purry*, No. 2:14-cr-00332-JAD-VCF, 2020 WL 2773477, at *2 (D. Nev. May 28, 2020); *Shayota*, 2020 WL 2733993 at *5; 18 U.S.C. § 3553(a).

On balance, the court finds that granting defendant's motion and reducing his sentence to one of time served would not be consistent with the § 3553(a) sentencing factors.

**CONCLUSION**

Because defendant Sanchez has failed to: (1) exhaust administrative remedies or show good cause for waiver of the exhaustion requirement, (2) demonstrate that "extraordinary and compelling" reasons exist justifying his release under 18 U.S.C. § 3582(c)(1)(A), and (3) show that his release from imprisonment at this time would be consistent with the sentencing factors set forth in 18 U.S.C. § 3553(a), his motion for compassionate release (Doc. No. 155) is denied.

IT IS SO ORDERED.

Dated: **February 12, 2021**

UNITED STATES DISTRICT JUDGE